Matthew J. Witteman (SBN 142472)
LAW OFFICES OF MATTHEW J. WITTEMAN
133 South Main Street
Sebastopol, CA  95472
(415) 362-3106; (707) 721-213

Attorney for Plaintiffs
MARIN ADVOCATES FOR CHILDREN
KERLINE MS. ASTRE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIN ADVOCATES FOR CHILDREN, a California Non-Profit Corporation, KERLINE MS. ASTRE, an Individual,<br><br>          Plaintiffs,<br><br>     vs.<br><br>SUSAN MCQUAID, an Individual, and JAMES FINDLAY, an Individual, CALIFORNIA CASA, BEVERLY WOODS, THE CALIFORNIA JUDICIAL COUNCIL, and DOES 1-100,<br><br>          Defendants.<br>_____ | Case No:<br><br>**COMPLAINT FOR RACIAL DISCRIMINATION AND ILLEGAL RETALIATION IN GRANT AWARDS, INTERFERENCE WITH CONTRACT AND ECONOMIC ADVANTAGE, DEFAMATION, AND INFLICTION OF EMOTIONAL DISTRESS** |

Come now plaintiffs Marin Advocates for Children (hereafter "MAC") and Kerline Astre (sometimes hereafter "MS. ASTRE"), and allege the following.

## I.    INTRODUCTION

1.     MAC and MS. ASTRE fundamentally seek remedies here for longstanding and well documented race and class bias "in the most sacred cow of child welfare," Court Appointed Special Advocates programs ("CASA"), and for defendants' actions which have eliminated or

COMPLAINT - 1

jeopardized critical programs for at risk youth in Marin.   Defendants have resisted plaintiffs' efforts, although the defendant California CASA in apparent conjunction with the defendant California Judicial Council, specifically called for them, and responded by targeting plaintiffs with a far-reaching and racially inspired campaign of character assassination and intimidation: a sort of "bloodless lynching" of plaintiffs and MS. ASTRE in particular.  The defendants decided "to kill not only the messenger, but the message," starting at the top with MS. ASTRE, a queer black woman and the voice, face, and embodiment of the diversification efforts of MAC. Plaintiffs state claims accordingly.

## II.    JURISDICTIONAL AND VENUE ALLEGATIONS

1.5    As appears more fully below, this court has jurisdiction of this matter under 28 USC section 1331 because plaintiff asserts violations of the United States Constitution, other federal law, and 42 USC 1983.  Venue is proper in this District inasmuch as the claims arise out of occurrences in Marin County, where many defendants have done business at all times relevant to this complaint.

## III.    PARTIES

2.    Plaintiff MARIN ADVOCATES FOR CHILDREN is a California non-profit corporation with its principle place of business in Marin County.

3.    Plaintiff MS. ASTRE was a resident of Contra Costa County at all relevant times detailed below but now resides in South Africa.

4.    On information and belief, Defendant SUSAN MCQUAID at all relevant times has been a resident of Sonoma County.

5.    On information and belief, Defendant JAMES FINDLAY at all relevant times has been a resident of Marin County.

6.    California CASA ("CAL CASA") is an organization of form unknown, doing business in the counties of Sonoma and Marin, California.

7.    Beverly Woods ("WOODS"), is an individual and Superior Court Judge in Marin

County, California.

8.     Tthe California Judicial Council ("JUDICIAL COUNCIL"), an agency of the State of California.

9.     Plaintiffs do not know the true names of defendants DOES 1 through 100, inclusive, and therefore sues them by those fictitious names.

10.    Defendants and each of them at all times acted as the agents, employees, partners, joint tort-feasors, co-conspirators, and/or joint ventures of one another.  In doing the acts alleged herein, defendants and each of them were acting at least in part within the course and scope of said agency, employment, partnership, joint-tort, conspiracy, and/or joint venture with the direction, advance knowledge, authorization, acquiescence, or subsequent ratification of one another.  Such parties assisted one another in the acts alleged herein.  Defendants and each of them agreed to the course of action alleged herein, ratified, and conspired with and aided and abetted one another in achieving that objective and pursuing that course of action.   Defendants and each of them benefited from the illegal and wrongful acts alleged herein, and should be held accountable for same.  Without limiting the generality of the foregoing, Defendants and each of them acted with intentional, willful, and malicious disregard of the rights and impact of defendants' conduct on plaintiffs.

11.    Without admitting the need to do so, plaintiffs have lodged a timely government claim against WOODS and the JUDICIAL COUNCIL, or were excused from doing so.  State law and other applicable claims against such a person or entity(ies) are provisionally brought herein to prevent the running of the statute of limitations against such defendant(s), but otherwise suspended and stayed until such government claims have been denied.

### IV. GENERAL FACTS

12.    For 35 years MAC has recruited, trained, supervised, and assigned CASA volunteers to serve as court advocates for children in dependency, family law, and juvenile matters before the Marin Superior Court.  The Marin Superior Court has certified MAC's program during this time and appointed its CASA volunteers to cases.  At all times relevant to this complaint, the Marin Superior Court has worked in close conjunction with the defendants

CAL CASA and the JUDICIAL COUNCIL in order that CASA volunteers might be available as advocates to at-risk youth.  The operations of these entities are closely intertwined in the pursuit of this objective.  Among other things, defendants CAL CASA and the JUDICIAL COUNCIL monitor and/or audit the performance of local CASA programs such as MAC, and award or materially assist in the award of federal and state grants for local CASA programs such as MAC. CAL CASA similarly reaches out to and works with local CASA programs such as MAC and individual CASA volunteers to insure their education, competence, and compliance with applicable law.

13.     There have been, however, serious concerns raised about racial bias and the lack of diversity in the CASA program, although CASA volunteers may mean well.  While more than 41 percent of the children to whom CASA's are assigned nationwide are children of color, only 18 percent of CASA volunteers are nonwhite.  In Marin County, the numbers are significantly worse and exacerbated by the income gap between the children and families served – largely low income – and CAL CASA volunteers – largely high income.  The consensus view, well supported by studies and statistics, is that these disparities contribute to the appearance and/or reality of institutional race and class bias, and compromise placement outcomes.  It may be no coincidence that black children are in foster care 23 times the rate of white children in Marin County.

14.     For these and similar reasons, the National CASA Association commissioned a 2004 study that challenged the effectiveness of the court volunteers' services and suggested that they spend little time on cases, particularly those of black children, and are associated with more removals from the home and fewer efforts to reunited children with parents or relatives.  In light of this continuing problem which has proven resistant to change, CAL CASA in apparent conjunction with the JUDICIAL COUNCIL conducted an audit of MAC in 2015 and specifically called for "a much more robust outreach plan for men, Latinos and African Americans."

15.     Against this backdrop, MAC's Board in February 2016 announced the search for a new Executive Director ("ED") because its longtime executive director was retiring. In March, 2016, the Board's search committee was seriously considering two candidates.  Ultimately, the

Board concluded that neither candidate was satisfactory for the executive position because each lacked the experience, integrity, or communication skills necessary for the position. The search committee continued to review resumes and interviewed candidates. In April, 2016, the search committee received MS. ASTRE's resume and interviewed MS. ASTRE for the ED role. The Board found that MS. ASTRE stood out among all other candidates because of her skills and qualifications. Even though MS. ASTRE did not have direct experience with CASA programs, the Board found that MS. ASTRE was by far the most qualified candidate because of her extensive experience with non-profit programs and MAC's specific needs.

16.   Even before MS. ASTRE was hired, however, and certainly afterwards, defendants attacked MS. ASTRE and then MAC with a far-reaching campaign of racially inspired falsehood, defamation, and intimidation, promoting and encouraging disrespect and insubordination of MS. ASTRE and the MAC Board of Directors, both within MAC, the ranks of CAL CASA volunteers, and the public at large, and ultimately destroying their independence and ability to function.

17.   Before MS. ASTRE's hire, MCQUAID and other Defendants advanced the notion and racist "trope" that MS. ASTRE was a criminal.  MCQUAID was a longtime volunteer for and donor to MAC.  MCQUAID is a white, wealthy resident of Sonoma County. On information and belief, MCQUAID searched on the internet for MS. ASTRE's name as part of an unsolicited background search of MS. ASTRE.  MAC did not request that MCQUAID perform this search. Through her search, MCQUAID found a website on the sixth or seventh page of the Google results for MS. ASTRE's name that purported to have MS. ASTRE's mugshot on it.  MCQUAID presented the results of her search to MAC's Board and most of the staff members to advocate that MAC not hire MS. ASTRE because she had a criminal background.

18.   At this time, MAC had already ordered its own background check as part of its regular hiring practices. The background check was pending and no prior arrest had been disclosed. The Board asked MS. ASTRE for more information about the arrest. MS. ASTRE was forthcoming and explained that she was a young black woman in the South that had been arrested and falsely accused of shoplifting.  The charges were dropped, and the arrest did not

result in any conviction.  In light of the foregoing, MAC's Board explained to MCQUAID that MAC could not use an arrest that did not lead to a conviction as a reason to deny employment. Such a use would have violated state law and federal guidelines, exposing MAC to liability for racial discrimination.  Undeterred, however, MCQUAID and other Defendants continued to press MAC not to hire and to terminate MS. ASTRE as set forth in greater detail in the following paragraphs.

19.     MAC ultimately hired MS. ASTRE as the new ED because she was the most qualified candidate.  Among other things, MS. ASTRE had years of successful nonprofit management, capital campaign efforts, and the development of relationships with key stakeholders.  MS. ASTRE was an extremely personable and intelligent person and a rising star in the non-profit community, and MAC's Board of Directors was pleased she accepted MAC's offer of employment.  MS. ASTRE was also committed to expanding MAC's outreach for men, Latinos and African Americans pursuant to the directives of the California Judicial Council and CAL CASA.  As a queer black women, MS. ASTRE also represented the embodiment of MAC's commitment to diversification.

20.     As MAC's ED, MS. ASTRE's duties were those of overall leadership, improving the operation and fiscal health of MAC's existing programs, and expanding its programs to fit the needs of the community.  MAC's two primary programs were the CASA program, and the MAC's Child Abuse Prevention Council ("CAPC") program, a program of outreach and public education designed to prevent child abuse before it starts.  MS.  ASTRE immersed herself in both, joining the national Court Appointed Special Advocates organization and attending its national conference. MS. ASTRE reached out to other CASA programs to see how they were managed, as part of her research into how she could improve the CASA program. MS. ASTRE familiarized herself with MAC's CASA training program and attended training sessions up to the last days of her tenure.  MS. ASTRE also began looking at ways to expand MAC's CAPC program. MS. ASTRE is a victim of child abuse and, as a result, was very passionate about expanding this program to better serve Marin County's abused children.

21.     On information and belief, after MS. ASTRE was hired as MAC's new ED,

MCQUAID and other Defendants continued to inform other CAL CASA and MAC volunteers and donors that MS. ASTRE had a criminal background, without disclosing the true nature of her prior arrest, creating a false impression that MS. ASTRE had actually committed a crime, undermining MS. ASTRE's legitimacy as MAC's new ED, and exposing MAC to liability for racial discrimination.   The implication advanced by MCQUAID and Doe Defendants, that MS. ASTRE was a criminal, similarly played into racial stereotypes of young, black Americans as criminals.

22.     On information and belief, after MS. ASTRE was hired as MAC's new ED, MCQUAID and other Defendants continued to represent that MS. ASTRE was not a good fit for MAC, was unqualified, and did not have "the right connections" in the community.  MCQUAID and other Defendants, as well-connected white "pillars of the community," had inherent cultural power over MS. ASTRE, and such defendants' criticisms were inspired at least in part by racial animus against MS. ASTRE as a black woman in a position of authority over defendants, as well as a generalized resistance to and retaliation for MS. ASTRE's diversification efforts.

23.     Defendants' criticisms, moreover, were ill-founded and referenced or suggested factual predicates that were demonstrably false.  Among other things, MS. ASTRE was highly qualified to be the ED at MAC, and her performance at MAC was superlative by almost all measures: e.g. saving the grant for the CAPC program, tripling foundation donations, obtaining grants, teaching the Board how to be more active in its efforts, and reorganizing the program to reach MAC's goals, all while staying on budget.

24.  MS. ASTRE and MAC, moreover, took specific steps to remedy the lack of racial and class diversity among the ranks of CASA volunteers that CAL CASA in apparent conjunction with the JUDICIAL COUNCIL criticized, to shorten the wait list for CASA volunteers' to minority and other communities, and attempted to revitalize and expand MAC's CAPC program so that child abuse and neglect might be reduced before the need for court intervention and CASA volunteers arose.  It was these specific steps to remedy institutional race and class bias, and improve outreach to minority and other communities, that defendants objected to most, and so retaliated against MAC and MS. ASTRE for their efforts.

25.     In this way, and on information and belief, plaintiffs allege that within months of MS. ASTRE being hired, MCQUAID and other Defendants, including but not limited to CASA volunteers began planning to have MS. ASTRE removed as MAC's new ED.

26.     On November 2, 2016, MS. ASTRE made personnel changes at MAC to advance the goals of MAC and offset the resistance of Defendants to diversification and better service to minority and at risk youth.

27.     On November 14, 2016, well after hours, MCQUAID confronted MS. ASTRE in MS. ASTRE's office wherein MCQUAID made a number of personal and professional attacks on MS. ASTRE, warning MS. ASTRE that things were going to get "worse." MCQUAID stated that the personnel changes were a mistake, inhumane, egregious, and unprofessional. MCQUAID recounted MS. ASTRE's traumatic personal history and accused MS. ASTRE of using the organization to cleanse MS. ASTRE's trauma and history of sexual abuse. MCQUAID told MS. ASTRE that, "Nobody gives a shit about your personal journey." MCQUAID expressed to MS. ASTRE that MS. ASTRE lacked the level of compassion, competency, connections, and specific skill needed to lead the organization—specifically stating "You don't know Marin. You have no clue about how things work here"—and stating that the Board did not undergo a thoughtful process to hire her. MCQUAID told MS. ASTRE she does not belong at MAC and that MCQUAID would ensure that MS. ASTRE failed. MCQUAID closed by stating that she must have ruined MS. ASTRE's ability to sleep that night and then facetiously offered to give MS. ASTRE a hug.

28.     After this meeting, MS. ASTRE was disturbed and frightened and immediately reported the incident in detail to MAC's Board.  MS. ASTRE continues to suffer emotional distress as a result of the long course of defendants' racially inspired campaign to "ride her out of town on a rail," including but not limited to MCQUAID's outrageous behavior at the November 14, 2016, meeting.

29.     In mid-November 2016, MCQUAID and two other CASA volunteers on behalf of a large number of CASA volunteers demanded a meeting with the Board. Some Board members attended the meeting. MCQUAID on behalf of herself and other CASA volunteers made a series

of demands and maintained that MS. ASTRE was unqualified for the ED position and that the Board should order her to complete the CASA training.

30.     Although the Board acquiesced to certain demands of the CASA contingent, such as training, the Board would not terminate MS. ASTRE.  As a result of what MCQUAID perceived as an inadequate response to her demands, MCQUAID in early December 2016 resigned as a volunteer and withdrew her support as a donor.   On information and belief, MCQUAID and other Defendants fomented dissent among other CASA volunteers and donors, representing that MAC's Board never should have hired MS. ASTRE because MS. ASTRE was not qualified for the ED position. Thereafter, several more CASA/MAC volunteers and donors began withdrawing their support for the organization. The content and format of each resignation letter and withdrawal of support for MAC was so strikingly similar that the coordinated effort cannot be mistaken.   MCQUAID and others CASA volunteers and Defendants hereby effectively crippled MAC and prevented it from performing its grant based duties with respect to the CASA program, but with respect to the CAPC program as well.

31.     In the midst of this, MS. ASTRE received a letter of support from a MAC CASA volunteer that also expressed her concern about the divisiveness growing in MAC's volunteer community. MS. ASTRE believed that sharing this letter with its appeal to coming together as a community could begin to heal MAC's community of volunteers. MS. ASTRE asked the volunteer if she could distribute the letter. The volunteer requested that the letter be distributed only with her name removed from it.

32.     MS. ASTRE sent the letter to CAL CASA and MAC volunteers, explaining that the letter was anonymous and therefore was unsigned.

33.     On January 2, 2017, FINDLAY, then a CAL CASA volunteer at MAC, sent an email to more than 35 of CAL CASA and MAC volunteers, and included MS. ASTRE as a recipient, stating the following:

> Of course I remain in touch with many of my former colleagues in the Marin CASA program and recently I read the "anonymous letter" from a CASA to his/her fellow CASA's espousing the attributes of the Executive Director. Seriously? Unsigned? Seriously?

There is little doubt that that document was "created" to make the current "management" look good -- and a weak attempt to provoke sympathy...the words "pathetic" and "unprofessional" come quickly to mind. What a joke.

34.    At or around the same time, defendant CAL CASA in the person of its executive John Lipp specifically advised and/or requested that MAC terminate MS. ASTRE.  Mr. Lipp referenced multiple letters of complaint from CASA volunteers, or what he called a "lack of community support" as the basis for Lipp's advocacy and request that MAC terminate MS. ASTRE.   Mr. Lipp and CAL CASA persisted in these efforts although they were advised that the so called "lack of community support" was nothing more than the opposition of CASA volunteers to diversification, that it was based on racially inspired and retaliatory falsehoods and defamation.  This same association of CASA volunteers subsequently formed, with the approval, assistance, and certification of CAL CASA and other Defendants, Marin CASA, a non-profit corporation which presently receives federal and state grants to carry on MAC's CASA work in Marin County.

35.    Later in January 2017, and as a proximate result of the uninformed, false, and defamatory outcry of Defendants and an affiliated CASA "lynch mob," defendant WOODS in conjunction with by the request or with the approval of defendant CAL CASA, terminated MAC's CASA designation and access to CASA federal and state grants, citing only a consistent "lack of community support."  Plaintiffs specifically advised these defendants before they terminated that access that the so called "lack of community support" was nothing more than the opposition of CASA volunteers to diversification, that it was based on racially motivated falsehoods and defamation, and that plaintiffs stood ready to provide more detailed information to such defendants should they require it.  Such defendants refused these offers, and concluded in the person of defendant WOOD that she and they were making no determination of the validity of the allegations of the disgruntled CASA volunteers, but that the withdrawal of their support was sufficient to terminate MAC's status as a CASA provider and access to CASA grants.

36.    Accordingly, MAC was removed from Marin County's CASA program, and MS. MS. ASTRE resigned as MAC's ED but continues to work as a consultant to help MAC wind up its affairs.

37.     MAC is now in the process of winding up its affairs as a non-profit. As a result of MAC closing its doors, there is no longer a dedicated Child Abuse Prevention Council Program in Marin County.

38.     On June 16, 2017, MCQUAID sent a threatening email to MAC's board demanding that MAC turn over all of its assets to a new CASA program started by MCQUAID. MCQUAID copied Marin County District Attorney, Edward Berberian, on this email implying that MAC and MS. ASTRE were engaging in impropriety by not distributing MAC's assets to MCQUAID's organization—even though MAC is still wrapping up its affairs and, once wound up, will distribute its remaining assets in accordance with California law.

## V. CLAIMS

### FIRST CLAIM FOR RELIEF

### ON BEHALF OF MS. ASTRE

### RACIAL DISCRIMINATION AGAINST DEFENDANTS AND DOES 1 - 100

39.     Plaintiffs incorporate paragraphs 1 through 38 as if set forth herein.

40.     Defendants and each of them have discriminated against MS. ASTRE in her employment, community service, and professional life on the basis of her race in violation of 42 USC 2000(d), the Equal Protection Clause, Privilege and Immunities Clause, and Due Process Clause of the United States Constitution, s 42 USC 1983, and other provisions of federal law.

41.     WOODS, the JUDICIAL COUNCIL, and the Marin Superior Court have provided significant encouragement, either overt or covert to private defendants in this discrimination, and/or private defendants have operated as a willful participant in joint activity with the governmental entities or their agents.  Such private defendants have been controlled by the agency of governmental entities, have been delegated individually or collectively a public function of government entities, have been entwined with governmental policies, or governmental entities are entwined with the management and control of such private defendants.

42.     MS. ASTRE has been proximately damaged by defendants' wrongful conduct, including but not limited to loss of income, reputation, and emotional distress.

43.     Defendants' conduct was done knowingly, willfully, and with malicious intent,

entitling MS. ASTRE to an award of punitive damages against private defendants in an amount to be determined by proof at trial.

WHEREFORE Plaintiffs pray for judgment as set forth herein.

## SECOND CLAIM FOR RELIEF

## ON BEHALF OF MAC AND MS. ASTRE

## RACIAL DISCRIMINATION IN GRANTS AGAINST DEFENDANTS AND DOES 1 - 100

44.     Plaintiffs incorporate paragraphs 1 through 43 as if set forth herein.

45.     Defendants and each of them have terminated MAC's access to federal CASA grants in violation of the laws and provisions of the United States prohibiting racial discrimination in the awarding of government grants and/or the use of government funds, including but not necessarily limited to 42 USC 2000(d) as well as 42 USC 1983 and other applicable law.

46.     WOODS, the JUDICIAL COUNCIL, and the Marin Superior Court have provided significant encouragement, either overt or covert to defendants in this wrongful conduct, and/or private defendants have operated as a willful participant in joint activity with the governmental entities or their agents.  Such private defendants have been controlled by the agency of governmental entities, have been delegated individually or collectively a public function of government entities, have been entwined with governmental policies, or governmental entities are entwined with the management and control of such private defendants.

47.     MAC and MS. ASTRE have been proximately damaged by defendants' wrongful conduct, including but not limited to loss of income, reputation, and emotional distress.

48.     Defendants' conduct was done knowingly, willfully, and with malicious intent, entitling MAC and MS. ASTRE to an award of punitive damages against private defendants in an amount to be determined by proof at trial.

WHEREFORE Plaintiffs pray for judgment as set forth herein.

///

///

///

///

**THIRD CLAIM FOR RELIEF**

**ON BEHALF OF MAC AND MS. ASTRE**

**WRONGFUL TERMINATION OF GRANTS IN VIOLATION OF PUBLIC POLICY**

**AGAINST DEFENDANTS AND DOES 1 - 100**

49.     Plaintiffs incorporate paragraphs 1 through 48 as if set forth herein.

50.     Defendants and each of them have terminated or caused to be terminated MAC's access to federal CASA grants in violation of 42 USC 2000(d) and laws and policies of the United States prohibiting racial discrimination in the awarding of such grants, and/or retaliation for efforts to conform MAC's use of such grants to the conditions of such grants.

51.     WOODS, the JUDICIAL COUNCIL, and the Marin Superior Court have provided significant encouragement, either overt or covert to defendants in this wrongful conduct, and/or private defendants have operated as a willful participant in joint activity with the governmental entities or their agents.  Such private defendants have been controlled by the agency of governmental entities, have been delegated individually or collectively a public function of government entities, have been entwined with governmental policies, or governmental entities are entwined with the management and control of such private defendants.

52.     MAC and MS. ASTRE have been proximately damaged by defendants' wrongful conduct, including but not limited to loss of income, reputation, and emotional distress.

53.     Defendants' conduct was done knowingly, willfully, and with malicious intent, entitling MAC and MS. ASTRE to an award of punitive damages against private defendants in an amount to be determined by proof at trial.

WHEREFORE Plaintiffs pray for judgment as set forth herein.

**FOURTH CLAIM FOR RELIEF**

**ON BEHALF OF MAC AND MS. ASTRE**

**BREACH OF DUTY OF CARE AGAINST DEFENDANTS AND DOES 1 - 100**

54.     Plaintiffs incorporate paragraphs 1 through 53 as if set forth herein.

55.     Defendants acting as aiders and abetters, agents, partners, joint venturers, joint tort-feasers, and/or conspirators with one another and third parties, had fiduciary duties and duties to exercise reasonable care, and promoted, encouraged, and assisted third parties that had such duties, to avoid undermining and violating the non-profit corporate laws of the State of California, as well as the independent functioning of MAC, its Board of Directors, and its management.

56.     Defendants breached such duties by undermining and violating the non-profit corporate laws of the State of California, as well as the independent functioning of MAC, its Board of Directors, and its management, and by promoting, encouraging, and assisting third parties to undermine and violate the non-profit corporate laws of the State of California, as well as the independent functioning of MAC, its Board of Directors, and its management.

57.     MAC and MS. ASTRE have been proximately damaged by defendants' wrongful conduct, including but not limited to loss of income, reputation, and emotional distress.

58.     Defendants' conduct was done knowingly, willfully, and with malicious intent, entitling MAC and MS. ASTRE to an award of punitive damages against private defendants in an amount to be determined by proof at trial.

WHEREFORE Plaintiffs pray for judgment as set forth herein.

### FIFTH CLAIM FOR RELIEF

### ON BEHALF OF MAC AND MS. ASTRE

### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### AGAINST DEFENDANTS AND DOES 1 - 100

59.     Plaintiffs incorporate paragraphs 1 through 58 as if set forth herein.

60.     MAC was in an economic relationship with MARIN COUNTY and/or CALIFORNIA, and MS. ASTRE was in an economic relationship with MAC.

61.     Defendants knew of these relationships.

62.     Defendants engaged in a campaign of falsehood, defamation, intimidation and racial discrimination as alleged above.

63.     By engaging in this conduct defendants intended to disrupt the specified

economic relationships or knew that such disruption was substantially certain to occur.

64.     The specified economic relations of MAC and MS. ASTRE were disrupted.

65.     MAC and MS. ASTRE suffered an income and wage loss as a result of defendants' conduct.

66.     Defendants' conduct was a substantial factor in causing plaintiffs' damages.

WHEREFORE Plaintiffs pray for judgment as set forth herein.

## SIXTH CLAIM FOR RELIEF

## ON BEHALF OF MS. ASTRE

## INTERFERENCE WITH CONTRACT AGAINST DEFENDANTS AND DOES 1 - 100

67.     Plaintiffs incorporate paragraphs 1 through 68 as if set forth herein.

68.     There was a contract between a contract of employment between MAC and MS. ASTRE.

69.     Defendants knew of this contract.

70.     Defendants conduct prevented the performance of this contract.

71.     Defendants intended to prevent the performance of the contract.

72.     MS. ASTRE suffered loss of wage, income, and other damages as a proximate result of defendants' conduct.

73.     Defendants' conduct was a substantial factor in causing plaintiffs' damages.

WHEREFORE Plaintiffs pray for judgment as set forth herein.

## SEVENTH CLAIM FOR RELIEF

## ON BEHALF OF MAC AND MS. MS. ASTRE

## DEFAMATION/TRADE LIBEL AGAINST FINDLAY AND DOES 1 - 100

74.     Plaintiffs incorporate paragraphs 1 through 75 as if set forth herein.

75.     On January 2, 2017, FINDLAY sent an email to more than 35 of CAL CASA/MAC volunteers, including MS. ASTRE as a recipient, stating the following:

> Of course I remain in touch with many of my former colleagues in the Marin CASA program and recently I read the "anonymous letter" from a CASA to his/her fellow CASA's espousing the attributes of the Executive Director. Seriously? Unsigned? Seriously?

> There is little doubt that that document was "created" to make the current
> "management" look good -- and a weak attempt to provoke sympathy...the words
> "pathetic" and "unprofessional" come quickly to mind. What a joke.

76.     On its face, FINDLAY's statement imputed to MAC and MS. ASTRE that they were "unprofessional" because they had created and distributed a fabricated letter solely to "look good." Such an implication inherently harms MAC's and MS. ASTRE's reputations.

77.     When FINDLAY made his statement, he knew or consciously disregarded that his statement was false. MAC and MS. ASTRE had not created the unsigned letter to make themselves look good. MS. ASTRE had obtained the letter from a volunteer, who had requested to remain anonymous in light of the animosity among MAC's volunteers.

78.     FINDLAY had no substantial basis for concluding that a letter identified by MAC as anonymous was "fabricated" given the totality of the circumstances. In addition, the letter and other communications contain ample evidence of FINDLAY's animus and malice toward plaintiffs. FINDLAY's reckless disregard for the truth of his statement and other conduct demonstrates FINDLAY's malice toward MAC and ASTRE.

79.     As a result of FINDLAY's statement and additional false statements by DOES 1 through 100, MS. ASTRE has suffered emotional distress and harm to her professional reputation.

80.     As a result of FINDLAY's statement and additional false statements by DOES 1 through 100, MAC's standing in the community has been diminished, and the organization is now closing its doors.

81.     FINDLAY's conduct was done knowingly, willfully, and with malicious intent. FINDLAY chose to send his email to a broad group of MAC's volunteers with the sole purpose of harassing and shaming MS. ASTRE and MAC. FINDLAY knew or consciously regarded that his email would cause MS. ASTRE and MAC significant reputational harm. FINDLAY had no legitimate purpose for sending the email. MS. ASTRE and MAC are entitled to punitive damages in an amount to be determined by proof at trial.

82.     Plaintiffs claims were previously asserted in state court within one year of their accrual, and plaintiffs here meet all the requirements for equitable tolling of the applicable

statute of limitations: notice to defendants, plantiffs' diligence and good faith in prosecution, no prejudice to the defendants, and other factors.

WHEREFORE Plaintiffs pray for judgment as set forth herein.

## EIGHTH CLAIM FOR RELIEF

## ON BEHALF OF MS. MS. ASTRE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST MCQUAID AND DOES 1-100

83.     Plaintiffs incorporate the preceding allegations in paragraphs 1 through 82 fully herein as though set forth herein.

84.     MCQUAID was a wealthy and influential volunteer and donor for MAC. Since MAC's removal as Marin County's CASA program, she has become the Board Chair of MAC's successor organization, Marin CASA. MCQUAID's status and ties in the community placed her in a position of power over MS. ASTRE.

85.     Because MCQUAID, a rich white woman, had influence and extensive experience with CASA programs, she should have known that her position of power over MS. ASTRE—a young, queer, black woman—made MS. ASTRE particularly susceptible to emotional distress. This was particularly true given MCQUAID'S attacks on MS. ASTRE for being a victim of childhood sexual abuse.

86.     MCQUAID in conjunction with Defendants and others intentionally engaged in an extraordinary, relentless, and lengthy pattern of harassment against MS. ASTRE since she was first considered for the Executive Director position at MAC, wherein MCQUAID has made repeated, veiled (and thinly veiled at that) threats to MS. ASTRE's livelihood and professional reputation.  MCQUAID engaged in a far-reaching campaign of racially inspired falsehood, defamation, and intimidation, promoting and encouraging disrespect and insubordination of MS. ASTRE and the MAC Board of Directors, both within MAC, the ranks of CAL CASA volunteers, and the public at large, and ultimately destroying their independence and ability to function.

87.     Before MS. ASTRE's hire, MCQUAID and other Defendants advanced the notion

and racist "trope" that MS. ASTRE was a criminal.  MCQUAID was a longtime volunteer for
and donor to MAC.  MCQUAID is a white, wealthy resident of Sonoma County. On information
and belief, MCQUAID searched on the internet for MS. ASTRE's name as part of an unsolicited
background search of MS. ASTRE.  MAC did not request that MCQUAID perform this search.
Through her search, MCQUAID found a website on the sixth or seventh page of the Google
results for MS. ASTRE's name that purported to have MS. ASTRE's mugshot on it.  MCQUAID
presented the results of her search to MAC's Board and most of the staff members to advocate
that MAC not hire MS. ASTRE because she had a criminal background.

88.    At this time, MAC had already ordered its own background check as part of its
regular hiring practices. The background check was pending and no prior arrest had been
disclosed. The Board asked MS. ASTRE for more information about the arrest. MS. ASTRE was
forthcoming and explained that she was a young black woman in the South that had been
arrested and falsely accused of shoplifting.  The charges were dropped, the presiding judge
apologized from the bench, and he arrest did not result in any conviction.  In light of the
foregoing, MAC's Board explained to MCQUAID that MAC could not use an arrest that did not
lead to a conviction as a reason to deny employment.  Such a use would have violated state law
and federal guidelines, exposing MAC to liability for racial discrimination.  Undeterred,
however, MCQUAID and other Defendants continued to press MAC to not hire or terminate MS.
ASTRE as set forth in greater detail in the following paragraphs.

89.    On information and belief, after MS. ASTRE was hired as MAC's new ED,
MCQUAID and other Defendants continued to inform other CAL CASA and MAC volunteers
and donors that MS. ASTRE had a criminal background, without disclosing the true nature of her
prior arrest, creating a false impression that MS. ASTRE had actually committed a crime,
undermining MS. ASTRE's legitimacy as MAC's new ED, and exposing MAC to liability for
racial discrimination.    The implication advanced by MCQUAID and Doe Defendants, that MS.
ASTRE was a criminal, similarly played into racial stereotypes of young, black Americans as
criminals.

90.    On information and belief, after MS. ASTRE was hired as MAC's new ED,

MCQUAID and other Defendants continued to falsely represent that MS. ASTRE was not a good fit for MAC, was unqualified, and did not have "the right connections" in the community. MCQUAID and other Defendants, as well-connected white "pillars of the community," had inherent cultural power over MS. ASTRE, and such defendants' criticisms were driven at least in part by racial animus against MS. ASTRE as a black woman in a position of authority over defendants, as well as a generalized resistance to and retaliation for MS. ASTRE's diversification efforts.

91.     MCQUAID and other Defendants continued to promote and encourage disrespect and insubordination of MS. ASTRE and the MAC Board of Directors, both within MAC, the ranks of CASA volunteers, and the public at large, and ultimately destroying their independence and ability to function.  Such disrespect and insubordination included was not limited to people turning their back on MS. ASTRE, failing to introduce or identify her as the Executive Director at public gatherings and meetings, airing comments and using a tone of voice demeaning her position and authority, and conducting themselves in way that undermined her position and authority.  This was the face of sophisticated and "inscrutable" racial discrimination in well-heeled and liberal White Marin.

92.     On November 14, 2016, MCQUAID went to MS. ASTRE's office and made a number of highly offensive and outrageous threats and attacks on MS. ASTRE. The attacks were as follows:

- MCQUAID accused MS. ASTRE of "using" MAC and MS. ASTRE's "role" as Executive Director "to deal with or address [MS. ASTRE's] trauma and sexual abuse" and characterized that as "unprofessional."
- MCQUAID told MS. ASTRE that "Nobody gives a shit about your personal journey."
- In regards to MS. ASTRE extending an offer of support to all CASA's with their cases, MCQUAID responded, "No one will come to you. You are not a CASA, nor do you have the benefit of an experienced CASA to support us."
- MCQUAID erroneously told MS. ASTRE that the Board of Directors did not

undergo a thoughtful process in the hiring of MS. ASTRE.

- MCQUAID told MS. ASTRE that she lacked the level of compassion, competency, connections, and specific skill needed to lead the organization.

- MCQUAID warned MS. ASTRE that things would get far worse before they got better.

- MCQUAID warned MS. ASTRE that she has not begun to see the gravity of the repercussions of MS. ASTRE's actions, but will.

- MCQUAID told MS. ASTRE, "You can stop thinking that the CASAs don't know anything because we know everything. We share emails and we talk. We have done so especially since your actions."

- MCQUAID stated: "You don't know Marin. You have no clue about how things work here."

- MCQUAID assured MS. ASTRE that MAC is losing CASAs and that more will follow.

- After MS. ASTRE shared to MCQUAID that she and MAC are committed to recruiting more CASAs and diversifying them, MCQUAID responded saying "[MS. ASTRE] will have even less luck trying to "diversify" our pool in a County that is predominantly white."

At the end of the meeting, MCQUAID stood up and said, "Well, I've probably depressed you and you won't be able to sleep tonight."  MCQUAID then facetiously offered to hug MS. ASTRE. MCQUAID's extreme and outrageous conduct was made with the intention of causing, or made with reckless disregard of the probability of causing, emotional distress to MS. ASTRE.

93.     After MCQUAID's vicious comments and attacks on MS. ASTRE, MS. ASTRE began experiencing severe emotional distress and no longer felt safe to meet with CASAs alone or at all.  MS. ASTRE was unable to sleep for long periods and experienced other significant physical symptoms caused by defendant's conduct.

94.     Since the November 14 meeting, MCQUAID continued to foment dissent amongst CASA volunteers to have MS. ASTRE removed as MAC's executive director.

95.     After MS. ASTRE ceased serving as MAC's ED, MCQUAID has continued to harass MAC and MS. ASTRE, including her June 16 email copied to Marin County's District Attorney.

96.     As a result of MCQUAID's conduct, MS. ASTRE was and continues to be upset, nervous and humiliated, and continues to suffer extreme and severe mental suffering and duress. MS. ASTRE has sought medical help for the stress.

97.     MCQUAID's outrageous and extreme conduct went beyond that usually tolerated in a civilized society.  MCQUAID knew or, as a result of her personal animosity toward MS. ASTRE, consciously disregarded the natural consequences of her conduct—that MS. ASTRE would suffer severe emotional distress.  In her meeting with MS. ASTRE, MCQUAID admitted that she was motivated to ruining MS. ASTRE's career and ensuring that MS. ASTRE failed as MAC's ED.  MCQUAID had no reason to investigate MS. ASTRE's background, to berate and attack MS. ASTRE, or to continue her pattern of harassment while MS. ASTRE aided in wrapping up MAC's affairs.  MCQUAID's pattern of harassment was designed to harm MS. ASTRE. MS. ASTRE is entitled to punitive damages in an amount to be determined by proof at trial.

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

## PRAYER FOR RELIEF

1.     Awarding general damages in an amount to be proven at trial, but no less than $600,000;

2.     Awarding special damages according to proof;

3.     Awarding punitive damages in an amount to be proven at trial;

4.     Attorney's fees and costs;

5.     And any other relief that this Court deems proper.

///

///

///

1

## JURY DEMAND

2       Plaintiffs hereby demand a trial by jury of all issues.

3   DATED: 1/8/2018             LAW OFFICES OF MATTHEW J. WITTEMAN

4

                    By:   _____

5                                Matthew Witteman

6                                ATTORNEYS FOR PLAINTIFFS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25