UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERLINE ASTRE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SUSAN MCQUAID, et al.,<br><br>　　　　Defendants. | Case No. 3:18-cv-00138-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. No. 14, 20 |

**INTRODUCTION**

The former executive director of Main Advocates for Children ("MAC"), Kerline Astre, alleges that certain donors and volunteers, the California Court Appointed Special Advocate program, and Marin Superior Court Judge Beverly Wood, led a racially-motivated campaign against her that resulted in her removal as MAC's executive director. She brings several federal and state law claims against defendants. Two of the volunteers have moved to dismiss her complaint and to strike her state law claims because they constitute a Strategic Lawsuit Against Public Participation. At this juncture, I will only address the federal claims against the volunteers because they do not presently provide a basis for federal question jurisdiction under 28 U.S.C. § 1331. I do not intend to assert supplemental jurisdiction on the state claims absent a plausible federal claim. Astre's complaint is DISMISSED. She should file an amended complaint, if any, within 20 days.[1]

---

[1] Astre has now served Judge Wood and Cal CASA. Dkt. Nos. 37, 38. Judge Wood and Cal CASA need not respond to the complaint, but instead should respond to the amended complaint. I will address any subsequent motions to dismiss at the same time.

# BACKGROUND

## I. FACTUAL BACKGROUND

For the past 35 years, former-plaintiff Marin Advocates for Children ("MAC") has recruited, trained, supervised, and assigned Court Appointed Special Advocate ("CASA") volunteers for children in dependency, family law, and juvenile matters before Marin Superior Court. First Am. Compl. ¶ 13 ("FAC")(Dkt. No. 6). MAC's program was certified by Marin Superior Court, until the acts underlying this lawsuit transpired. *Id*.

Given concerns about racial bias and lack of diversity in Marin County's CASA program, the National CASA Association commissioned a 2004 study into the program, and in 2005, CAL CASA and the Judicial Council conducted an audit of MAC. *Id*. ¶ 15. The audit called for "a much more robust outreach plan for men, Latinos, and African Americans." *Id*.

In February 2016, MAC's Board began the search for a new Executive Director ("ED") to take office following the retirement of its longtime ED. FAC ¶ 16. In April 2016 or soon thereafter, MAC offered plaintiff Kerline Astre the ED position; as a "queer black wom[a]n," she "represented the embodiment of MAC's commitment to diversification." *Id*. ¶¶ 16, 20. Even though she did not have any experience with CASA programs, she had extensive experience managing non-profits and capital campaign efforts, and developing relationships with key stakeholders. *Id*. ¶¶ 16, 20. She accepted the offer. *Id*. ¶ 16.

Before Astre began work, defendant Susan McQuaid, a white, wealthy resident of Sonoma County and longtime MAC volunteer and donor, performed an internet search and located a website that purportedly displayed Astre's mugshot. Compl. ¶ 18. McQuaid presented her search results to MAC's Board and staff to advocate that MAC not hire Astre because of her criminal background. *Id*. The Board, who had ordered its own background check as part of the hiring process, asked Astre about the arrest, and Astre disclosed that she had been arrested and falsely accused of shoplifting as "a young Black woman in the South[.]" *Id*. ¶ 19. The charges were dropped and the arrest did not result in any conviction. *Id*. MAC's Board explained to McQuaid that it could not use the information as a basis not to hire Astre. *Id*.

After Astre was hired as MAC's ED, McQuaid and others continued to inform other CAL

2

CASA and MAC volunteers that Astre had a criminal background, without disclosing the true nature of her prior arrest. FAC ¶ 22. McQuaid and others also vocally shared their view that Astre was "not a good fit," "unqualified," and "did not have the right connections in the community." *Id*. ¶ 23. Astre alleges that "defendants' criticisms were inspired at least in part by racial animus against [Astre] as a black woman in a position of authority over defendants[.]" *Id*. Despite McQuaid's attacks, Astre successfully performed as MAC's ED. *Id*. ¶¶ 24–25. In addition to budgetary achievements, she began to take steps to remedy the lack of racial and class diversity in MAC's CASA program. *Id*. ¶ 25. Astre claims that these steps prompted McQuaid and others to retaliate against her and seek her removal as MAC's ED. *Id*. ¶ 26.

On November 14, 2016, McQuaid confronted Astre in her office with a series of personal and professional attacks. FAC ¶ 28. McQuaid discounted Astre's personal history of sexual abuse, criticized her personnel changes, chastised her for "hav[ing] no clue about how things work here," and promised to ensure her failure. *Id*. Astre was "disturbed and frightened and immediately reported the incident in detail to MAC's Board." *Id*. ¶ 29. Around the same time, McQuaid and two other CASA volunteers demanded a meeting with the Board to continue their campaign against Astre. *Id*. ¶ 30. The Board refused to terminate Astre. In December 2016, McQuaid resigned as a volunteer, withdrew her support as a donor, and continued to foment dissent among other CASA volunteers and donors. *Id*. ¶ 31. Thereafter, several other CASA/MAC volunteers and donors began withdrawing their support and "effectively crippled MAC and prevented it from performing its grant-based duties with respect to the CASA program[.]" *Id*.

In the midst of this turmoil, Astre received a letter of support from a MAC CASA volunteer. FAC ¶ 32. Astre felt that sharing the letter could help heal the community of volunteers, so she asked the volunteer if she could distribute it. The volunteer requested that her name be removed. *Id*. Astre distributed the letter with the name removed, explaining that the letter was "anonymous" and therefore unsigned. *Id*. ¶ 33.

On January 2, 2017, defendant James Findlay, a former CAL CASA volunteer at MAC, sent the following email to more than 35 CAL CASA and MAC volunteers, including Astre:

3

> Of course I remain in touch with many of my former colleagues in the Marin CASA program and recently I read the "anonymous letter" from a CASA to his/her fellow CASA's espousing the attributes of the Executive Director. Seriously? Unsigned? Seriously?
> There is little doubt that that document was "created" to make the current "management" look good -- and a weak attempt to provoke sympathy...the words "pathetic" and "unprofessional" come quickly to mind. What a joke.

Compl. ¶ 34.

Around the same time, John Lipp, an executive with CAL CASA, requested that MAC terminate Astre's employment. Compl. ¶ 35. Lipp referenced a number of complaints from volunteers and a "lack of community support." *Id*. A group of CASA volunteers, with the assistance of CAL CASA, formed Marin CASA, a non-profit corporation to carry on MAC's CASA work. *Id*. Later in January 2017, Marin Superior Court Judge Beverly Wood,[2] on the request of CAL CASA, terminated MAC's CASA designation and access to CASA federal and state grants, "citing only a consistent 'lack of community support.'" *Id*. ¶ 36. Astre advised Judge Wood and CAL CASA that the "lack of community support" was "nothing more than the opposition of CASA volunteers to diversification, that it was based on racially motivated falsehoods and defamation, and that [she] stood ready to provide more detailed information … should they require it." *Id*. Judge Wood and CAL CASA refused her offer to provide more information. *Id*. Astre thereafter resigned as MAC's ED, but is still assisting MAC in the process of winding up its affairs. *Id*. ¶¶ 37–38.

On June 16, 2017, McQuaid sent a threatening email to MAC's Board demanding that MAC's assets be distributed to McQuaid's organization. FAC ¶ 39.

## II. PROCEDURAL HISTORY

On October 23, 2017, Astre and MAC filed a complaint against James Findlay and Susan McQuaid in California Superior Court, Sonoma County. Defs.' Request for Judicial Notice ("RJN"), Ex. 1.[3] On November 28, 2017, defendants responded by filing a demurrer and a motion

---

[2] The FAC references Judge Woods, but the parties' subsequent briefing refers to her as Judge Wood.

[3] Defendants requested judicial notice of pleadings in the State court action, and an article from

4

to strike pursuant to California's Strategic Lawsuit Against Public Participation Statute. Defs.' RJN, Ex. 2,3. Plaintiffs filed an ex parte application requesting leave to file a motion permitting them to conduct discovery in response to defendants' motions.

On January 8, 2018, plaintiffs filed this action.[4] Compl. (Dkt. No. 1). On January 17, 2018, the state court denied plaintiffs' ex parte application (Defs.' RJN, Ex. 4). The next day, plaintiffs filed their first amended complaint in this action ("FAC")(Dkt. No. 6). On January 19, 2018, plaintiffs voluntarily dismissed their state court action. Defs.' RJN, Ex. 5.

Astre and MAC bring the following claims for relief: (1) racial discrimination under 42 U.S.C. §§ 1981, 1983, the Fourteenth Amendment of the United States Constitution, and "other provisions of federal law[,]" (2) racial discrimination in the awarding of grants, (3) wrongful termination of grants in violation of Federal public policy on behalf of MAC, (4) wrongful termination of contracts in violation of Federal public policy on behalf of MAC, (5) wrongful interference with economic advantage in violation of Federal public policy, (6) Title VII claim on behalf of Astre, (7) FEHA claim on behalf of Astre, (8) racial discrimination claim based on the California Constitution, (9) another FEHA claim on behalf of Astre, (10) breach of the duty of care, (11) wrongful interference with contract, (12) wrongful interference with economic advantage, (13) defamation/trade libel against Findlay, and (14) intentional infliction of emotional

---

the Marin Independent Journal "for the proposition that the Marin County Superior Court removed the authority of [MAC] to operate its Court Appointed Special Advocate program." Findlay's RJN (Dkt. No. 14-1); A "court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes proceedings in other courts. *Bennett v. Medtronic, Inc.,* 285 F.3d 801, 803 n. 2 (9th Cir. 2002) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.' "). It may also include subjects reported in the news media if they are "generally known within the territorial jurisdiction" or "capable of sufficiently accurate and ready determination." *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 459 (9th Cir. 1995)(citing Fed. R. Evid. 201(b)). Defendants' requests for judicial notice are GRANTED. The article will only be judicially noticed for the specific proposition (that the Court removed MAC's authority to operate its CASA program) because it is "capable of sufficiently accurate and ready determination."

[4] Present counsel points out that the State Court action was brought by prior counsel. Witteman Decl. ¶¶ 4–5 (Dkt. No. 16-1). At the same time he filed the federal complaint, he filed a motion for leave to amend the state court complaint. He also indicates that the ex parte application to file a motion for discovery was in response to defendants' motion for attorney's fees because plaintiffs had to prove the merits of their claims.

1 distress against McQuaid. First Am. Compl. ("FAC")(Dkt. No. 6).

2 On February 14, 2018, MAC filed a notice of voluntary dismissal of its claims without prejudice. Dkt. No. 13.

On February 15, 2018, Findlay filed a motion to dismiss (Dkt. No. 14) and a special motion to strike pursuant to California Code of Civil Procedure § 425.16 (Dkt. No. 15), and on March 9, 2018, McQuaid filed a motion to dismiss (Dkt. No. 20), and a special motion to strike pursuant to California Code of Civil Procedure § 425.16 (Dkt. No. 21). The motions were consolidated for hearing on April 24, 2018.

## LEGAL STANDARD

### I. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

6

by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. MOTIONS TO DISMISS[5]

#### A. Live Claims

Defendants correctly note that claims 3 and 4 of the amended complaint were asserted by MAC. *See* FAC at 14–15. Since MAC voluntarily dismissed its claims (Dkt. No. 13), those claims are no longer live. Also, in opposition to McQuaid's motion to dismiss Astre indicated that she "withdraws" her claims under Title VII, her redundant FEHA claim (claim 9), and her claim under the California Constitution. Opp'n to McQuaid MTD at 17. Those claims are DISMISSED WITH PREJUDICE.

#### B. Federal Claims[6]

##### 1. Racial Discrimination (Claim 1)

Astre argues that defendants can be liable for racial discrimination under section 1981, even though they are private actors. In 1976, the Supreme Court found it "well established that § 1 of the Civil Rights Act of 1866, 14 Stat. 27, 42 U.S.C. [§] 1981, prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). In addition, a plaintiff may state a section 1981 claim against a third-party who is not plaintiff's employer, nor in privity of any purported contract. *See Goodman v. Lukens Steel Co.*,

---

[5] Defendants object to the extrinsic evidence Astre submitted in opposition to their motions. Findlay Reply at 9; McQuaid Reply at 9–10. On a motion to dismiss, I am confined to the pleadings and will not consider the declarations.

[6] Astre alludes to a due process claim based on Judge Wood's decertification of MAC without "a hearing, notice of charges and/or evidence, right to confront and call witnesses, etc.[,]" and she specifically seeks to leave to amend her complaint based on these allegations. She also references a potential claim under 42 USC 1982. *See* Opp'n at 12. If she intends to bring such claims, and if they are plausible, she should include them in her amended complaint.

7

482 U.S. 656, 668–69 (1987)(affirming judgment against collective bargaining unit under both Title VII and § 1981); *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 914–15 (7th Cir. 1991)("While it is true that the contract exists between the employer and the employee, and not between the employee and the union, this distinction does not insulate the union from § 1981 liability.").[7]

Those general principles begin, not end, the inquiry of whether Astre has stated a claim for relief against McQuaid and Findlay. "[S]ection 1981 is limited to claims of intentional discrimination." *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 536 (9th Cir. 1982). A plaintiff's claim must "allow a legally-permissible inference of discriminatory intent." *Id*. at 538. As McQuaid underscores, Astre's complaint fails to allege racial discrimination. Astre emphasizes that she is black and McQuaid is white, and she references McQuaid's disparagement of her for not being from Marin County and not understanding how things work there. While McQuaid's criticisms may ring with racial tenor, they do not establish a prima facie case of intentional discrimination. And Astre's contract was with MAC, which did not breach its obligations to her. She has not plausibly pleaded how defendants Findlay and McQuaid intentionally discriminated against her on the basis of race in the making and enforcement of private contracts. Her claim under section 1981 is DISMISSED WITH LEAVE TO AMEND.

### 2. Racial Discrimination in Grants (Claim 2) and Wrongful Interference with Economic Advantage in Violation of Federal Public Policy (Claim 5)

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "To state a claim for damages under Title VI, plaintiff must allege that (1) the defendant entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal

---

[7] *Goodman* and *Daniels* both involved collective bargaining agreements, which distinguish them from the facts here. *Goodman*, 482 U.S. at 682 (Powell, J., concurring in part and dissenting in part)(noting that the collective-bargaining agreements prohibited discrimination on the basis of race); *Daniels*, 945 F.2d at 915 (noting that the collective bargaining agreement "contain[ed] an express non-discrimination clause").

8

financial assistance." *Rashdan v. Geissberger*, No. C 10-00634 SBA, 2011 WL 197957, at *8 (N.D. Cal. Jan. 14, 2011). Given the requirement that the entity involved is receiving federal financial assistance, "[i]t is beyond question … that individuals are not liable under Title VI." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1171 (11th Cir. 2003). Astre's claims against individual defendants under Title VI in Claim 2 fail as a matter of law.[8] Claim 2 is DISMISSED WITH PREJUDICE as to the individual defendants.

As for claim 5, Astre has not offered a basis for that claim. She argues that, "it cannot be the case … that a government actor can award or rescind federal grants in a racially discriminatory manner." To the extent that she intends to state this claim against a government actor, it will be addressed if and when those parties are served with the complaint.

Astre has failed to plausibly plead any federal claims against McQuaid or Findlay. I will decline to exercise supplemental jurisdiction over any state law claims she may assert absent federal jurisdiction.

## C. State Law Claims

Although I will not address Astre's state law claims directly, there are some glaring issues that she should consider in drafting her amended complaint. Facts need to be alleged to support claims in federal court. For example, an allegation of conspiracy needs more than bare legal conclusions to survive a motion to dismiss. *See Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1173 (2016)(finding conspiracy allegations "too conclusory[,]" in part because there were "no factual allegations about the nature of [the] agreement."); *State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (2007)(finding plaintiff's conspiracy allegations "amount[ed] to bare legal conclusions."). Similarly, a breach of duty claim needs to allege who breached the duty, and if the duty was owed to MAC, how Astre is entitled to recover for a breach. And individuals who are not employers may not be sued under the FEHA for alleged discriminatory acts. *See Reno v Baird*, 18 Cal. 4th 640, 663 (1998). This is not an exhaustive list

---

[8] Astre concedes that her claims against individuals based on Title VI fail, but contends that there must be some avenue for relief. *See* Opp'n at 18. To the extent she can plausibly plead a claim for relief based on these allegations, I will grant her leave to do so.

of pleading issues on the state law claims, but they do suggest areas to which Astre may want to pay particular attention.

## II. MOTIONS TO STRIKE

I am only addressing the federal claims at this time because I am focused on the availability of federal jurisdiction over this case. The motions to strike will remain pending, and I may address them if and when defendants move to dismiss the amended complaint. Defendants need not re-file special motions to strike the state law claims from the amended complaint; I will deem the pending motions applicable to the amended complaint.

## CONCLUSION

Astre has not plausibly pleaded any federal claims against McQuaid or Findlay. Her complaint is DISMISSED (with leave to amend, where noted). On amendment, if she is unable to state a federal claim against any served defendant, I will decline to exercise supplemental jurisdiction against any potentially remaining state law claims. She should file an amended complaint (if any) within 20 days.

**IT IS SO ORDERED.**

Dated: May 15, 2018

William H. Orrick
United States District Judge