UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERLINE ASTRE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SUSAN MCQUAID, et al.,<br><br>　　　　Defendants. | Case No. 3:18-cv-00138-WHO<br><br>**ORDER GRANTING LEAVE TO FILE A THIRD AMENDMENT COMPLAINT AND DISMISSING THE COMPLAINT**<br><br>Re: Dkt. Nos. 45, 50, 51, 52, 53, 62, 66, 77 |

**INTRODUCTION**

Plaintiff Kerline Astre argues that she was forced to leave her role as executive director of Main Advocates for Children ("MAC") because of a racially motivated campaign against her. Astre was hired in or about April 2016, and just eight months later MAC lost its federal and state funding and Astre resigned. She now brings suit against donors and volunteers Susan McQuaid and James Findlay, the California Court Appointed Special Advocate Association ("Cal CASA"), and Marin Superior Court Judge Beverly Wood, alleging violations of 42 U.S.C. sections 1981, 1983, 1985, and 1986. She also brings several state law claims.

The federal claims alleged in the Third Amended Complaint do not provide a basis for federal question jurisdiction under 28 U.S.C. § 1331. Because there is no plausible federal claim, I will not assert supplemental jurisdiction on the state claims. Astre's complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

**I. FACTUAL BACKGROUND**

For the past 35 years, former-plaintiff Marin Advocates for Children ("MAC") has recruited, trained, supervised, and assigned Court Appointed Special Advocate ("CASA")

volunteers for children in dependency, family law, and juvenile matters before Marin Superior Court. Third Amended Complaint ¶ 12 ("TAC") (Dkt. No. 77). MAC's program was certified by Marin Superior Court until the acts underlying this lawsuit transpired. *Id.*

Given concerns about racial bias and lack of diversity in Marin County's CASA program, the National CASA Association commissioned a 2004 study into the program, and in 2005, Cal CASA and the Judicial Council conducted an audit of MAC. *Id.* ¶¶ 13–14. The audit called for "a much more robust outreach plan for men, Latinos, and African Americans." *Id.* ¶ 14.

In February 2016, MAC's Board began the search for a new Executive Director ("ED") to take office following the retirement of its longtime ED. *Id.* ¶ 15. In April 2016 or soon thereafter, MAC offered plaintiff Kerline Astre the ED position; as a "queer black woman," she "represented the embodiment of MAC's commitment to diversification." *Id.* ¶¶ 16, 24. Even though she did not have any experience with CASA programs, she had extensive experience managing non-profits and capital campaign efforts and developing relationships with key stakeholders. *Id.* ¶¶ 15, 16, 24. She accepted the offer. *Id.* ¶ 15.

Before Astre began work, defendant Susan McQuaid, a wealthy white resident of Sonoma County and longtime MAC volunteer and donor, performed an internet search and located a website that purportedly displayed Astre's mugshot. *Id.* ¶ 22. McQuaid presented her search results to MAC's Board and staff to advocate that MAC not hire Astre because of her criminal background. *Id.* The Board, who had ordered its own background check as part of the hiring process, asked Astre about the arrest, and Astre disclosed that she had been arrested and falsely accused of shoplifting as "a young Black woman in the South[.]" *Id.* ¶ 23. The charges were dropped and the arrest did not result in any conviction. *Id.* MAC's Board explained to McQuaid that it could not use the information as a basis not to hire Astre. *Id.*

After Astre was hired as MAC's ED, McQuaid and others continued to inform other Cal CASA and MAC volunteers that Astre had a criminal background, without disclosing the true nature of her prior arrest. *Id.* ¶ 26. McQuaid and others also vocally shared their view that Astre was "not a good fit," "unqualified," and "did not have the right connections in the community." *Id.* ¶ 29. They said Astre was not "the sort of person" who should represent MAC to its "well-

2

heeled Caucasian customers, clients, donors, and professionals." *Id.* ¶ 27. McQuaid and others were disrespectful and insubordinate to Astre. *Id.* ¶ 28. Individuals not identified in the complaint wrote letters that "sought to characterize [Astre] as lazy and slovenly in appearance, and as being overly sexualized." *Id.* ¶ 27. Astre alleges that "defendants' criticisms were inspired at least in part by racial animus against [Astre] as a black woman in a position of authority over defendants[.]" *Id.*

Despite McQuaid's attacks, Astre successfully performed as MAC's ED. *Id.* ¶ 29. In addition to budgetary achievements, she began to take steps to remedy the lack of racial and class diversity in MAC's CASA program. *Id.* ¶¶ 29, 31–32. She "separated" one or more individuals from MAC after they resisted her efforts and showed insubordination toward her. *Id.* ¶ 32. Astre claims that these steps prompted McQuaid and others to retaliate against her and seek her removal as MAC's ED. *Id.* ¶ 31.

On November 14, 2016, McQuaid confronted Astre in her office with a series of personal and professional attacks. *Id.* ¶ 34. McQuaid discounted Astre's personal history of sexual abuse, criticized her personnel changes, chastised her for "hav[ing] no clue about how things work here," and promised to ensure her failure. *Id.* Astre was "disturbed and frightened and immediately reported the incident in detail to MAC's Board." *Id.* ¶ 35. Around the same time, McQuaid and two other CASA volunteers demanded a meeting with the Board to continue their campaign against Astre. *Id.* ¶ 36. The Board refused to terminate Astre. *Id.* ¶ 37. In December 2016, McQuaid resigned as a volunteer, withdrew her support as a donor, and continued to foment dissent among other CASA volunteers and donors. *Id.* ¶ 37. Thereafter, several other CASA/MAC volunteers and donors began withdrawing their support and "effectively crippled MAC and prevented it from performing its grant-based duties with respect to the CASA program[.]" *Id.*

In the midst of this turmoil, Astre received a letter of support from a MAC CASA volunteer. FAC ¶ 38. Astre felt that sharing the letter could help heal the community of volunteers, so she asked the individual if she could distribute it. *Id.* The volunteer requested that the volunteer's name be removed. *Id.* Astre distributed the letter with the name removed,

3

explaining that the letter was "anonymous" and therefore unsigned. *Id.* ¶ 39.

On January 2, 2017, defendant James Findlay, a former Cal CASA volunteer at MAC, sent the following email to more than 35 Cal CASA and MAC volunteers, including Astre:

> Of course I remain in touch with many of my former colleagues in the Marin CASA program and recently I read the "anonymous letter" from a CASA to his/her fellow CASA's [sic] espousing the attributes of the Executive Director. Seriously? Unsigned? Seriously?
> There is little doubt that that document was "created" to make the current "management" look good -- and a weak attempt to provoke sympathy...the words "pathetic" and "unprofessional" come quickly to mind. What a joke.

*Id.* ¶ 40.

Around the same time, John Lipp, an executive with Cal CASA, requested that MAC terminate Astre's employment. *Id.* ¶ 41. Lipp referenced a number of complaints from volunteers and a "lack of community support." *Id.* ¶¶ 41, 43. Astre alleges that prior to this request, she had regularly received positive feedback from Lipp and other representatives of Cal CASA. *Id.* ¶ 42. Specifically, they supported her decision to separate the insubordinate individual(s) from MAC. *Id.* Astre alleges that a Cal CASA representative acknowledged that she was experiencing racial discrimination even while continuing to seek her resignation. *Id.* ¶ 43.

A group of CASA volunteers, with the assistance of CAL CASA, formed non-profit corporation Marin CASA to carry on MAC's CASA work. *Id.* ¶¶ 46, 51. Later in January 2017, Marin Superior Court Judge Beverly Wood, on the request of CAL CASA, terminated MAC's CASA designation and access to CASA federal and state grants, "citing only a consistent 'lack of community support.'" *Id.* ¶ 45. Astre advised Judge Wood and Cal CASA that the "lack of community support" was "nothing more than the opposition of CASA volunteers to diversification, that it was based on racially motivated falsehoods and defamation, and that [she] stood ready to provide more detailed information . . . should [Judge Wood] require it." *Id.* Judge Wood declined to hear more and concluded that, although she was not determining the validity of volunteers' complaints, their withdrawal of support provided sufficient basis for her decision. *Id.*

Astre thereafter resigned as ED because she concluded that after MAC lost funding, it would be unable to pay her salary and benefits. *Id.* ¶ 50. She remained interim ED without pay in

4

order to assist MAC in the process of winding up its affairs. *Id.*

On January 19, 2017, Marin CASA's articles of incorporation were filed with the California Secretary of State with McQuaid's signature on the paperwork. Marin CASA Request for Judicial Notice ("RJN") [Dkt. No. 62-1], Ex. 5.[1] On June 16, 2017, McQuaid sent a threatening email to MAC's Board demanding that MAC's assets be distributed to her organization. *Id.* ¶ 56.

**II. PROCEDURAL HISTORY**

On October 23, 2017, Astre and MAC filed a complaint against James Findlay and Susan McQuaid in California Superior Court, Sonoma County. McQuaid and Findlay RJN [Dkt. Nos. 52-1, 53-1], Ex. 1.[2] On November 28, 2017, McQuaid and Findlay responded by filing a demurrer and a motion to strike pursuant to California's Strategic Lawsuit Against Public Participation Statute. McQuaid and Findlay RJN, Exs. 2, 3. Plaintiffs filed an ex parte application requesting leave to file a motion permitting them to conduct discovery in response to defendants' motions.

On January 8, 2018, Astre and MAC filed this action. Dkt. No. 1. On January 17, 2018, the state court denied plaintiffs' ex parte application. McQuaid and Findlay RJN, Ex. 4. The next day, plaintiffs filed their first amended complaint in this action. Dkt. No. 6. On January 19, 2018, plaintiffs voluntarily dismissed their state court action. McQuaid and Findlay RJN, Ex. 5. On February 14, 2018, MAC filed a notice of voluntary dismissal of its claims in this action without prejudice. Dkt. No. 13. On May 15, 2018, I granted McQuaid and Findlay's motions to dismiss the first amended complaint filed but gave Astre leave to amend. Dkt. No. 39. Astre filed a

---

[1] Marin CASA requested judicial notice of its articles of incorporation, which were filed with the state of California. A "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The accuracy of these documents cannot reasonably be questioned, and Marin CASA's request for judicial notice is GRANTED. (Marin CASA's request lists the articles incorporation as exhibit 6, but the actual document is labeled as exhibit 5.)

[2] McQuaid and Findlay requested judicial notice of pleadings in the state court action. A court may judicially notice proceedings in other courts. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir. 2002) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). McQuaid and Findlay's requests for judicial notice are GRANTED.

second amended complaint on June 4, 2018. Dkt. No. 40.

Astre, McQuaid, Judge Wood, and Cal CASA subsequently filed motions to dismiss the second amended complaint. Dkt. Nos. 45, 52, 53, 62. The motions were consolidated for hearing on August 22, 2018. At the hearing, I shared my tentative opinion that I would dismiss the complaint, and I offered Astre the opportunity to submit a third amended complaint to add any additional allegations for my consideration and for consideration on appeal. Dkt. No. 76. Astre filed a motion for leave to file a third amended complaint on September 5, 2018 and attached the proposed complaint. Dkt. No. 77.

Astre brings the following claims for relief: (1) racial discrimination under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, (2) racial discrimination in grants, (3) wrongful termination, (4) racial discrimination under California Government Code section 12940, (5) negligent misrepresentation, (6) wrongful interference with contract, (7) wrongful interference with an economic relationship, (8) defamation, and (9) intentional infliction of emotional distress.

Having considered Astre's proposed amendments, I find that they fail to state a plausible claim under federal law. Accordingly, I GRANT Astre's motion for leave to file a third amended complaint but DISMISS IT WITH PREJUDICE.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION
### I. ALLEGATIONS AGAINST MARIN CASA

Astre brings claims against Marin CASA under section 1981, section 1985, section 1986, Title VI,[3] and state law. Nearly all of the events that Astre recounts in support of these allegations took place between April 2016 and January 2017, at which point Judge Wood terminated MAC's CASA designation. TAC ¶¶ 42–42. Marin CASA's articles of incorporation were not filed with the state until January 19, 2017. Marin CASA Motion to Dismiss ("MTD") [Dkt. No. 62] 6; Marin CASA RJN Ex. 5.

Astre argues that Marin CASA should be liable for the actions of an unincorporated association of MAC employees and directors who discriminated against her because that group "ultimately converted itself" into Marin CASA. Oppo. to Marin CASA MTD [Dkt. No. 69] 10. Her assertions are conclusory and are not supported by the facts she pleaded. Because Marin

---

[3] Although Astre's Title VI claim makes reference to Judge Wood, she asserts it only against Marin CASA. *See* Oppo. to Wood Mot. to Dismiss [Dkt. No. 61] 1 (noting that she only brings a section 1986 claim against Judge Wood).

7

CASA did not yet exist during the events in question, no federal claims can proceed against it. Accordingly, all of Astre's claims against Marin CASA are DISMISSED WITH PREJUDICE.

**II. SECTION 1981 CLAIMS**

Astre brings claims under section 1981 against McQuaid and Findlay.[4] She argues that they discriminated against her on the basis of race and that she suffered adversely in her employment as a result.

It is "well established that § 1 of the Civil Rights Act of 1866, 14 Stat. 27, 42 U.S.C. [section] 1981, prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). While section 1981 reaches private as well as government action, it "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 388, 391 (1982); *see Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 536 (9th Cir. 1982). A plaintiff's claim must "allow a legally-permissible inference of discriminatory intent." *Gay*, 694 F.2d at 538.

A plaintiff can plead intentional racial discrimination in a few ways. Under the *McDonnell Douglas* framework, she makes a prima facie case by showing: (i) membership in a protected class; (ii) she was qualified for a position; (iii) she suffered an adverse action; and (iv) she was treated differently from similarly situated people. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 690 (9th Cir. 2017) (applying the *McDonnell Douglas* framework to a section 1981 claim); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 402 (6th Cir. 1999). The burden then shifts to the

---

[4] Astre dropped the individual section 1981 claims against Cal CASA and Judge Wood in her oppositions to their motions to dismiss the second amended complaint. Oppo. to Cal CASA MTD [Dkt. No. 71] 13; Oppo. to Wood MTD 1. Yet in her third amended complaint, Astre failed to clarify that the section 1981 claims proceed only against McQuaid and Findlay, instead listing generally "defendants." *See* TAC ¶¶ 58, 60. There are insufficient facts to support a section 1981 claim against Cal CASA and Judge Wood. The section 1981 claims here serve as antecedents to Astre's section 1986 claims against them.

8

defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell*, 411 U.S. at 802. Alternatively, a plaintiff can "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason 'more likely than not motivated' the employer" to take the adverse employment action. *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017).

As an initial matter, this case involves an unusual factual scenario that does not easily fit within the section 1981 context.[5] Astre did not have an employment relationship with any of the defendants.[6] Her contract was with MAC, which did not breach its obligations to her. *See Gen. Bldg. Contractors*, 458 U.S. at 396 (noting that section 1981 does not make employers "the guarantors of the workers' rights as against third parties who would infringe them"). Accordingly, Astre's claims under section 1981 face two significant hurdles. First, Astre must plausibly plead facts giving rise to an inference that both McQuaid and Findlay acted with intent to discriminate against her on the basis of race. Second, she must plausibly plead that those actions caused her to suffer an adverse employment action, here constructive discharge.

Astre fails to state a claim under section 1981. For her claims against McQuaid, though the facts pleaded are borderline, they might be sufficient at this stage given the permissive bar for pleading intent. But this claim must fail because Astre has not plausibly pleaded that McQuaid's actions led to the end of her contract. Instead, Astre resigned after Judge Wood ended MAC's CASA designation and thus its stream of funding. McQuaid's conduct is simply too attenuated from the ultimate result. For her claims against Findlay, Astre fails to allege facts that could

---

[5] When asked at oral argument on August 22, 2018, counsel for Astre acknowledged that no case bears a similar factual scenario.

[6] Astre's complaint alleges that an unincorporated association of MAC volunteers and employees "became the alter-ego of MAC" that later "convert[ed] itself" into Marin CASA. TAC ¶ 53. These arguments fail to plausibly show an employment relationship for purposes of liability under section 1981.

9

permit an inference of discrimination.

**A. McQuaid**

The complaint alleges that McQuaid said Astre was not a "good fit" for MAC, called her unqualified, and disparaged her for not being from Marin County, not having the right connections, and not understanding how things work there. TAC ¶¶ 27, 29, 34. In the proposed third amended complaint, Astre adds that McQuaid said she was "not the sort of person MAC would want to present to its 'well-heeled' Caucasian customers, clients, donors, and professionals."[7] TAC ¶ 27. The complaint alleges that McQuaid's and other defendants' actions and criticisms "were inspired at least in part by racial animus" because Astre was black and held a position of authority over them. *Id.* ¶¶ 19, 27. In addition, Astre alleges that McQuaid and others retaliated against her for engaging in protected activity, namely taking steps to improve racial and class diversity within the organization and "separating" from MAC an individual who opposed those efforts. TAC ¶ 31.

Astre is not required to prove intent to discriminate at the pleading stage; she need only allege facts that, if proven, could be sufficient to support an inference of racial discrimination. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). The context of the comments and McQuaid's choice of words have racial undertones. McQuaid allegedly said the once-arrested black ED was "not the sort of person" who should represent the organization to its customers, clients, donors, and professionals—presumably all white people, given MAC's documented problems with racial diversity. She called Astre unqualified despite her experience. She disparaged her for being an outsider to the predominantly

---

[7] Astre also alleges that an unidentified individual called her "lazy and slovenly in appearance" and "overly sexualized" in apparent response to her using the word sexy at one point. TAC ¶ 27. These criticisms appear rooted in racist imagery, but they are not tied to McQuaid.

10

white Marin County. *See* Oppo. to McQuaid MTD 11, n. 10. Workplace discrimination rarely plays out in the form of epithets; rather, it operates invidiously, often through subtle comments that implicitly invoke race. The facts alleged here are sufficient to allege racial animus.[8] The issue is whether the conduct of a volunteer under these circumstances can create liability under section 1981.

Astre's claim fails because McQuaid made no employment decisions that adversely affected Astre—she had no power to do so. Instead, McQuaid expressed her dissent and withdrew her support from MAC. Only when many others had done the same did Judge Wood end MAC's CASA designation because of a lack of community support. Only then did Astre resign on the belief that MAC would no longer be able to pay her salary. As the facts unfolded, there is simply too much attenuation between McQuaid's actions and the termination of Astre's contract with MAC for Astre to plead a plausible section 1981 claim against McQuaid.[9]

**B. Findlay**

Astre alleges that Findlay sent an email implying that Astre faked an anonymous letter of support, which was "pathetic" and "unprofessional." TAC ¶ 40. There are no other allegations about specific actions Findlay took. The only fact Astre alleges that meaningfully ties this email to race is the race of the individuals involved. There are not enough facts to support an inference that racial animus motivated Findlay's individual actions. In addition, Astre's claim against Findlay suffers from the same attenuation defects as the claim against McQuaid.

---

[8] As required under the *McDonnell Douglas* framework, McQuaid offers "legitimate, nondiscriminatory reason[s]" for her actions. *See McDonnell Douglas*, 411 U.S. at 802; McQuaid MTD [Dkt. No. 52] 8 (asserting she called Astre unqualified because she had not previously been a CASA and said Astre did not understand how things worked in Marin because she was not from there). But McQuaid would only be required to make such an offering if she had in fact made an employment decision that adversely affected Astre. She did not.

[9] Astre also argues that a similarly situated predecessor at MAC and successor at Marin CASA were not treated the way she was. TAC ¶ 30. These allegations do not solve the attenuation issues that defeat her section 1981 claims.

11

Astre's allegations require too many implausible inferential leaps to state a claim. Her claims under section 1981 are DISMISSED WITH PREJUDICE.

**III. SECTION 1983 CLAIMS**

Astre adds a standalone claim under section 1983 for the first time in the third amended complaint. *See* TAC ¶¶ 63–68. To successfully assert a section 1983 claim, plaintiff must demonstrate that a person acting "under color of state law" deprived them of a constitutional or federal statutory right. 42 U.S.C. § 1983; *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) (citations omitted); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Astre's section 1983 claims fail because she has not plausibly pleaded that any of the defendants violated her statutory or constitutional rights. In addition, there are no facts that would show McQuaid, Findlay, or Cal CASA were acting under color of state law. Astre makes only conclusory allegations that they were controlled by government entities, delegated governmental functions, and entwined with governmental policies. *See* TAC ¶ 66; McQuaid MTD 9; Findlay MTD 7 [Dkt. No. 53] ; Cal CASA MTD [Dkt. No. 66] 18.

**IV. SECTION 1985 CLAIMS**

Astre argues that the defendants conspired to deny her civil rights in violation of 42 U.S.C. section 1985(3). She alleges that defendants opposed her attempts to diversify and prevent discrimination and conspired to oust her from MAC.

A claim under section 1985(3) requires: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828–29 (1983)). The plaintiff must show that the alleged violation was

12

motivated by race. *Id.*

Astre's section 1985 claims fail for two reasons. First, they are predicated on her section 1981 claims, which fail. *See Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (affirming dismissal of a section 1985 claim predicated on a section 1983 deprivation). Even if she had plausibly pleaded a section 1981 claim, there are not sufficient allegations regarding the formation of a conspiracy. "A civil conspiracy occurs when the parties have reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Suarez v. Hunter*, 985 F.2d 574 (9th Cir. 1993) (internal quotation marks and citations omitted). When direct evidence is unavailable, "concerted action may be inferred from circumstantial evidence of the defendant's conduct and course of dealings." *Id.* (internal quotation marks and citations omitted). Astre has failed to allege any facts to support an inference that defendants reached an agreement to end her contract with MAC because of her race. *See* TAC ¶¶ 69–72.

## V. SECTION 1986 CLAIMS

Astre argues that Cal CASA and Judge Wood violated section 1986 because they knew of the section 1985 conspiracy and failed to prevent it. TAC ¶ 74. "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Claims under section 1986 thus depend on the existence of a section 1985 claim, and there can be no liability for failure to prevent a conspiracy that has not been plausibly alleged.[10] Accordingly, Astre's section 1986 claim is DISMISSED WITH PREJUDICE.

---

[10] Even if a conspiracy were properly alleged, Astre would have to plead that Cal CASA and Judge Wood had the authority to stop it. *See* Cal CASA Mot. to Dismiss 17.

13

## VI. DUE PROCESS CLAUSE VIOLATION

Astre mentions due process in the factual section of the third amended complaint but drops the separate claim under the due process clause that she previously asserted. *See* TAC ¶¶ 48–49; SAC ¶¶ 69–73. Accordingly, Astre's due process clause claims against the defendants are DISMISSED WITH PREJUDICE.

## VII. MOTIONS TO STRIKE

McQuaid and Findlay filed motions to strike Astre's state law claims pursuant to California's Strategic Lawsuit Against Public Participation Statute. Dkt. Nos. 15, 21. Because I decline to extend supplemental jurisdiction over the state law claims in the absence of federal jurisdiction, these motions are DENIED AS MOOT.

## VIII. MOTION TO PRESERVE CONFIDENTIALITY

Astre filed a motion to preserve the identity of a third-party witness who allegedly co-conspired with defendants in this case, arguing that release of the individual's name would create risk of physical or mental harm. Mot. to Preserve Confidentiality [Dkt. No. 51] 3. The Ninth Circuit allows parties to proceed anonymously in the "unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (internal quotation marks and formatting omitted). Such cases include a risk of physical or mental harm, the need to protect privacy in a sensitive matter, and a risk of criminal prosecution. *See id.* at 1068. There is nothing in the record to suggest that this case falls into any of those unusual categories. In any event, Astre's motion to preserve confidentiality is DENIED AS MOOT.

## IX. MOTION TO SEAL

Astre seeks to seal a declaration filed in support of her motion to preserve confidentiality. Mot. to Seal [Dkt. No. 50]; *see* Astre Decl. [Dkt. No. 50-2]. A party seeking to seal court records

must overcome a strong presumption in favor of the public's right to access those records. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The Ninth Circuit imposes the "compelling reasons" standard dispositive pleadings, including motions for summary judgment. *Id.* at 1179. Supporting declarations must "articulate reasons supported by specific factual findings" to warrant sealing. *Id.* at 1178 (internal quotation marks omitted); *see Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (requiring a court to explain its findings "without relying on hypothesis or conjecture").

Astre asserts that she and the unnamed individual have a contractual agreement that prevents Astre from describing the person's alleged wrongdoing. Mot. to Seal 3. Astre asserts that public disclosure of the declaration would make it a "vehicle for improper purposes" and could subject Astre to liability. *Id.* There are insufficient facts to support the alleged harm. The declaration does not identify the alleged co-conspirator by name, and in briefing Astre has described the import of the declaration and provided details that would likely allow knowledgeable people to identify the individual. *See* Mot. to Preserve Confidentiality 3–4; Oppo. to McQuaid MTD 4–5, 8; Oppo. to Findlay MTD 4–5, 8. Astre's request does not meet the compelling reasons standard, and it is DENIED.

## CONCLUSION

For the foregoing reasons, Astre's third amended complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: October 26, 2018

_____
William H. Orrick
United States District Judge

15